IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Michael John Richwalski, ) | |
| ) | Civil Action No. 6:13-132-MGL-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[2]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits on September 19, 2007, alleging that he became unable to work on September 12, 2007. The application was denied initially and on reconsideration by the Social Security Administration. On July 22, 2008, the plaintiff requested a hearing. The administrative law judge ("ALJ"),

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this case.

[2] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

before whom the plaintiff and a vocational expert appeared on January 12, 2010, considered the case *de novo* and, on February 26, 2010, found that the plaintiff had engaged in substantial gainful activity during certain periods of 2007 and 2008, and there had been no continuous 12 month period during which he demonstrated the inability to engage in substantial gainful activity.  Thus, the ALJ found he was not under a disability as defined in the Social Security Act, as amended (Tr. 89-95).  The plaintiff appealed the decision in a request for review dated April 26, 2010.  In an order dated November 24, 2010, the Appeals Council found that the plaintiff had not engaged in substantial gainful activity from January 1, 2009, through the date of the decision, and the case was remanded (Tr. 96-98).

On April 5, 2011, a second hearing was held before the ALJ via videoconferencing.  The plaintiff appeared at the hearing along with Feryal Jurban, an impartial vocational expert.  In its remand order, the Appeals Council directed the ALJ to continue the sequential evaluation for the time period where no substantial gainful activity was evident, beginning on January 1, 2009.  On May 13, 2011, the ALJ again found the plaintiff was not under a disability as defined in the Social Security Act, as amended.  The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on November 7, 2012.  The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant will meet the insured status requirements of the Social Security Act through December 31, 2010.

> (2)    Through December 31, 2010, the claimant engaged in substantial gainful activity for the following periods:  3rd quarter of 2007, 4th quarter of 2007, 1st quarter of 2008, 2nd quarter of 2008, 3rd quarter of 2008, and 4th quarter 2008 (20 C.F.R § 404.1520(b) and 404.1571 *et seq*).

2

(3)    However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity.  The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

(4)    Through the date last insured, the claimant had the following severe impairments:  degenerative disc disease of the cervical and lumbar spine and an abdominal hernia (20 C.F.R. § 404.1520(c)).

(5)    Through the date last insured, the claimant does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

(6)    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform medium  work as defined in 20 C.F.R. § 404.1567(c).  Specifically, the claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently and stand, walk, and sit at least 6 hours each in an 8-hour day.  The claimant can occasionally climb ladders, ropes, and scaffolds.

(7)    Through the date last insured, the claimant was capable of performing past relevant work as a short order/fry cook (DOT #313.374-014, light, SVP 3).  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).

(8)    The claimant was not under a disability, as defined in the Social Security Act, from September 12, 2007, the alleged onset date through December 31, 2010, the date last insured (20 C.F.R. § 404.1520(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

**APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

4

Once an individual has established an inability to return to his or her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments that prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a  verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff has a high school education and was 65 years old on his date last insured of December 31, 2010 (Tr. 79, 364). He had previously worked as a dockman, cook, cleaner, set-up technician, bartender, shift supervisor, and newspaper handler (Tr. 367). Although he alleged disability beginning September 12, 2007, the plaintiff continued to work through late 2008 (Tr. 253, 331, 360). He collected unemployment benefits from the first quarter of 2009 through the second quarter of 2010 (Tr. 331-32).

Around the time of his alleged onset of disability in September 2007, the plaintiff complained of bilateral neck, back, hip, wrist, and knee pain, rating his overall pain at a six out of ten (Tr. 541). A comprehensive orthopedic examination by Regina A. Roman, D.O., in January 2008 revealed the plaintiff had full range of motion in the cervical spine and only slightly decreased range in the lumbar spine. At that time, the plaintiff had a negative straight leg raising test, normal gait, no spasms, and normal muscle strength, and he did not require an assistive device to walk (Tr. 543-46). The examining physician diagnosed chronic cervical and lumbar spine pain with preserved range of motion and noted tobacco abuse (Tr. 545). Imaging at this time showed mild to moderate degenerative changes of the lumbar spine and mild degenerative changes of the cervical spine (Tr. 551-52).

On January 25, 2008, state agency non-physician medical consultant Mary Lang reviewed the medical evidence of record and opined that the plaintiff could perform medium work but could only occasionally climb ladders, ropes, and scaffolds (Tr. 554-55).

As of March 2008, the plaintiff's chiropractor, Jin Dong, D.C., performed an independent medical evaluation of the plaintiff. The plaintiff had no severe decreased range of motion of the spine, had a nonantalgic gait, had intact sensation in his arms and legs, and was static and stable (Tr. 17, 671-77). The plaintiff reported he could handle personal needs, clean dishes, and do laundry without much difficulty (Tr. 670). He also

6

stated he could carry small and large objects, lift weights off a table, push and pull things while standing, and exercise his arms and legs without much difficulty (Tr. 18, 671). The total impression was of 27% impairment of the whole person, with a guarded prognosis (Tr. 677).

In April 2008, the plaintiff was referred for hernia surgery (Tr. 563). There is no record of him undergoing this surgery, and he worked after this date (Tr. 331, 360, 428-691).

On May 24, 2008, state agency physician Dr. William Cain reviewed the medical evidence and opined the plaintiff could perform light work (Tr. 567).

At the second hearing on April 5, 2011, the plaintiff testified he had degenerative disc disease in his lower back and that activity increased his pain from a six out of ten to a ten out of ten (Tr. 36). The plaintiff further testified that he had neck pain and a hernia but was unable to afford hernia surgery (Tr. 37-38). With regard to treatment, the plaintiff stated he went to a clinic for chiropractic adjustment and acupuncture every two weeks (Tr. 32).

In addition, the plaintiff stated he applied for unemployment benefits with the express caveat that he was limited in the type of work he could do and the amount of hours he could work (Tr. 42-43). The plaintiff also testified that he stopped collecting unemployment benefits when he "decided [he] can't work" (Tr. 43).

At the previous hearing on January 12, 2010, the ALJ had asked the vocational expert to assume a hypothetical individual of the plaintiff's age, education, and work history, who could perform medium work but could only occasionally climb ladders, ropes, and scaffolds (Tr. 76-77). The vocational expert testified that such an individual could perform the plaintiff's past work as a short-order cook (Tr. 77). At the April 2011 hearing, a new vocational expert testified that an individual who could lift only 15 pounds could not perform the plaintiff's past work (Tr. 46).

7

## ANALYSIS

The ALJ found that the plaintiff had engaged in substantial gainful activity between the third quarter of 2007 and the final quarter of 2008 and was thus ineligible for disability insurance benefits during that time (Tr. 14, Finding No. 2). The ALJ found that, after that time, the plaintiff had a continuous 12-month period in which he did not engage in substantial gainful activity (Tr. 15, Finding No. 3). The ALJ found that the plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine and an abdominal hernia (Tr. 15, Finding No. 4). The ALJ further found that the plaintiff had the residual functional capacity ("RFC") to perform medium work, with the further limitations that he could only occasionally climb ladders, ropes, and scaffolds, and he could perform his past relevant work as a short order/fry cook (Tr. 16, 19, Finding Nos. 6-7). The plaintiff argues that the ALJ erred by (1) finding that he was not a credible witness; and, (2) precluding his claim because he accepted unemployment benefits.[3]

The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold

---

[3]Although presented separately, the plaintiff's allegations of error both relate to the ALJ's assessment of his credibility.

8

obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565.  However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p, 1990 WL 300812).

> The court further acknowledged:
>
>> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n. 3 (quoting *Craig*, 76 F.3d at 595).  *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled.  However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider

in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001), which is cited in *Bull v. Colvin*, C.A. No. 6:12-3197–DCN, 2014 WL 692886, at *16 (D.S.C. Feb. 21, 2014). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)    the individual's daily activities;

(2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)    factors that precipitate and aggravate the symptoms;

(4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

10

(7)     any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3; *see also* 20 C.F.R. § 404.1529(c).

The ALJ found that while the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment (Tr. 16).  In assessing the plaintiff's credibility, the ALJ noted that the plaintiff had received relatively minimal and conservative treatment (Tr. 17).  The ALJ also found that the objective medical evidence did not support the plaintiff's subjective complaints.  Specifically, the ALJ cited the consultative evaluation in January 2008 in which the plaintiff had full range of motion in the cervical spine and only slightly decreased range of motion of the lumbar spine, normal muscle strength, no spasms, negative straight leg raising, and normal gait (Tr. 17 (citing Tr. 544-45)).  The ALJ also noted that, as of March 2008, the plaintiff had no severe decreased range of motion of the spine, had a nonantalgic gait, and intact sensation in the upper and lower extremities (Tr. 17 (citing Tr. 671-77)).  The ALJ further stated that while the plaintiff was assessed with a hernia and was referred to a surgeon for treatment, there was no indication that he followed up with any treatment whatsoever, having testified that he could not afford to do so (Tr. 17, 37-38, 563), and also does not appear to have received any less invasive treatments for this condition (Tr. 17, 428-691).

The ALJ further noted that the plaintiff's sole ongoing treatment was acupuncture and chiropractic adjustment (Tr. 17, 32-35). In addition, the ALJ considered the plaintiff's listing of medical procedures he underwent in 2008, 2009, and 2010 (Tr. 17-18 (citing Tr. 678-81)). However, the ALJ found this listing was not medical evidence because there was no indication that it was generated by the provider or that the listed procedures actually occurred (Tr. 17).

11

In assessing the plaintiff's credibility, the ALJ also considered the fact that the plaintiff engaged in significant work activity after the alleged onset date along with the plaintiff's activities of daily living, which included preparing meals, cleaning dishes, doing laundry, making his bed, and attending to his personal needs (Tr. 18). The ALJ also noted that in March 2008 the plaintiff told his chiropractor that he could carry small and large objects, lift weights off a table, push and pull things while standing, and exercise his arms and legs without much difficulty (Tr. 18, 671).

Lastly, in assessing the plaintiff's credibility, the ALJ considered the plaintiff's receipt of over $10,000 in unemployment benefits after his alleged disability onset date (Tr. 18). The plaintiff received benefits from the first quarter of 2009 through the second quarter of 2010. The ALJ noted that in order to receive state unemployment benefits, an individual must certify that he or she is able to work, is available for full-time work, is willing to accept suitable work if offered, and is actively seeking full-time work each week. The ALJ found that "[t]he application [for] and acceptance of unemployment benefits is facially inconsistent with a claim for disability." The ALJ further found that the receipt of such benefits was just one factor in the evaluation of a claimant's credibility, and, when considered with the other factors discussed in the decision, it also supported a finding that the plaintiff was not fully credible with regard to the severity of his limitations and pain (Tr. 18).

The plaintiff first contends that the ALJ erred in finding that he was not a credible witness because the majority of the evidence used by the ALJ in making the credibility determination took place prior to 2009 (pl. brief at 3). According to the plaintiff, since the ALJ found that he had performed substantial gainful activity through the end of 2008 and thus could not receive benefits for that period, the ALJ should not have considered evidence for that time period in evaluating his credibility regarding his conditions in 2009 and 2010 (*id.* at 3-4). However, as noted by the Commissioner, the ALJ did consider evidence from after the plaintiff stopped working, including the listing of medical

12

procedures he underwent in 2008, 2009, and 2010 (Tr. 17-18, 678-81).  Furthermore, since the plaintiff alleged he became unable to work on September 12, 2007 (Tr. 360), consideration of the evidence from that time forward was relevant in assessing the plaintiff's credibility.  *See* 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence.").

The plaintiff further argues that because the ALJ did not consider evidence from after his date last insured, she should not be permitted to consider the evidence from the time period during which he was working (pl. brief 3-4).  Specifically, the plaintiff takes issue with the ALJ's decision to accord "very little weight" to Dr. Dong's evaluation of the plaintiff in February 2011 (Tr. 18; *see* Tr. 687-91).

A person must be insured for disability insurance benefits in order to be eligible for such benefits.  *See* 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.315.  "Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's [date last insured]."  *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012) (citing  *Wooldridge v.* Bowen, 816 F.2d 157, 160 (4th Cir.1987)).  Consideration of such evidence is appropriate when the "evidence permits an inference of linkage with the claimant's pre-[date last insured] condition."  *Id.* (citing  *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir.1969)).

Here, the ALJ considered Dr. Dong's evaluation of the plaintiff in March 2008 in which Dr. Dong found the plaintiff had a 27% impairment of the whole person, with a guarded prognosis (*see* Tr. 669-77).  The ALJ noted that Dr. Dong is not considered an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513(a) and further found that Dr. Dong's opinion was inconsistent with the other evidence of record (Tr. 18).  The ALJ also cited Dr. Dong's evaluation of the plaintiff in February 2011 (Tr. 18) at which time he found that the plaintiff had a 29% impairment of the whole person, with a guarded prognosis (*see*

Tr. 687-91). The ALJ noted that the evaluation was completed after the date last insured. The ALJ gave the opinions "very little weight" (Tr. 18).

Dr. Dong is not an "acceptable medical source," but an "other source." *See* 20 C.F.R. § 404.1513(a), (d) (defining "acceptable medical sources" and noting that evidence from "other medical sources," such as chiropractors, may be considered)[4]; SSR 06-03p, 2006 WL 2329939, at *4 (stating that the weight to be given to evidence from other sources "will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors"); *Craig v. Chater*, 76 F.3d 585, 586 (4th Cir. 1996) (ALJ did not err in failing to expressly consider the report of physical therapist, an "other source"). "[O]nly 'acceptable medical sources' can be considered treating sources, . . . whose medical opinions may be entitled to controlling weight." SSR 06-03p, 2006 WL 2329939, at *2. The ALJ "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

The ALJ considered Dr. Dong's opinions, she did not completely disregard them, and she explained the weight given to these "other source" opinions sufficient to allow a subsequent reviewer to follow her reasoning (Tr. 18). Notably, Dr. Dong's evaluation findings were inconsistent with an orthopaedic evaluation in January 2008 that revealed the plaintiff had full range of motion in the cervical spine and only slightly decreased range in the lumbar spine. At that time, the plaintiff had a negative straight leg raising test; full right and left lateral flexion; full range of motion of shoulders, elbows, wrists, knees, hips, and ankles in all planes; normal gait; intact sensation; no spasms; and normal muscle strength

---

[4]The regulations define "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a).

(Tr. 543-46).  Accordingly, the undersigned finds the ALJ properly considered and evaluated Dr. Dong's opinion evidence and substantial evidence supports the ALJ's evaluation of the evidence.

Lastly, the plaintiff argues that the ALJ erred in considering his receipt of unemployment benefits in the assessment of his credibility.  The plaintiff specifically argues that the ALJ should have inquired into the circumstances surround his acceptance of the unemployment benefits, noting that no one discussed with him the effect of having concurrent applications for unemployment benefits and disability benefits at the time he applied for disability  (pl. brief 4-5 (citing Tr. 40)).  The Commissioner, however, contends that receipt of unemployment benefits is a proper factor for an ALJ to consider in making a credibility determination under four unpublished cases decided in this judicial district (def. brief 10–11).

The plaintiff relies on a November 2006 memorandum from Chief Social Security ALJ Frank Cristaudo (pl. brief 4).  Similarly, the plaintiff in *Brannon v. Astrue*, a recently decided case in this district, relied on the memorandum. C.A. No. 1:11-1568-SVH, 2012 WL 3842572, at *11 (D.S.C. Sept. 4, 2012). The court in *Brannon* found as follows:

> The court is not persuaded by Plaintiff's argument that the ALJ erred in finding that her application for unemployment benefits "automatically bar[red] her application for Social Security disability benefits." This argument is a mischaracterization of the ALJ's decision. The ALJ noted Plaintiff's application for unemployment benefits as one of many factors impacting his credibility determination and at no point stated that the application barred Plaintiff's application for disability benefits. Tr. at 23. The propriety of the ALJ's actions is underscored by the memoranda Plaintiff attaches as exhibits to her brief. In the memoranda, Chief Social Security ALJ, Frank Cristaudo set forth the SSA's policy on how the receipt of unemployment benefits impacts a disability determination. In the first memorandum, dated November 15, 2006, Judge Cristaudo wrote: "This is a reminder that the receipt of unemployment insurance benefits does not preclude the receipt of Social Security disability benefits. The receipt of unemployment benefits is only one of many factors that must be considered in

15

determining whether the claimant is disabled. *See* 20 CFR 404.1512(b) and 416.912(b)." The judge went on to state that "application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence." *Id.* In the second memorandum, Judge Cristaudo re-emphasized the position of the Social Security Administration that "individuals need not choose" between applying for the two types of benefits, and that "ALJs should look at the totality of circumstances in determining the significance of the application for unemployment benefits and related efforts to obtain employment." The ALJ complied with these memoranda and properly considered Plaintiff's application for unemployment benefits in conjunction with all of the medical and other evidence of record.

*Id.* (docket entry citations omitted). S*ee also Cook v. Astrue*, C.A. No. 0:11-1625-JFA-PJG, 2012 WL 1658923, at *4 (D.S.C. April 19, 2012) ("an application for disability may not be denied solely on the ground that the applicant received unemployment benefits"); *Elder v. Astrue*, C.A. No. 3:09-2365-JRM, 2010 WL 3980105, at *10 (D.S.C. Oct. 8, 2010) (ALJ's credibility finding supported in part by evidence that plaintiff applied for unemployment benefits).

In this case, the ALJ properly considered the plaintiff's receipt of unemployment benefits as just one of several factors that informed his ultimate assessment of the plaintiff's credibility (Tr. 18 (noting that while "the receipt of such benefits is to be only one factor in the evaluation of a claimant's credibility, when considered with other factors as mentioned above, it also supports a finding that the claimant is not fully credible with regard to the severity of his limitations and pain")). In light of this court's prior decisions in *Elder*, *Cook*, and *Brannon*, a remand for the ALJ to "clarify the reasons the Claimant accepted unemployment benefits," which is requested by the plaintiff (pl. brief 5), is not required.

In reviewing a Commissioner's decision, reviewing district courts "do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The

ALJ properly resolved the conflicting medical and non-medical evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (Section 405(g) precludes *de novo* review, and requires a court to uphold the Commissioner's decision "even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). Based upon the foregoing, the undersigned finds that the ALJ properly evaluated the plaintiff's credibility, and the findings are based upon substantial evidence.

### CONCLUSION AND RECOMMENDATION

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

April 25, 2014
Greenville, South Carolina